# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| | ) | |
| v. | ) | Cr. ID. No. 2209007025 |
| | ) | |
| | ) | |
| SEAN A. SMITH, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: May 1, 2024
Decided: August 9, 2024

## COMMISSIONER'S REPORT AND RECOMMENDATION THAT DEFENDANT'S MOTION FOR POSTCONVICTION RELIEF SHOULD BE SUMMARILY DISMISSED

Jillian L. Schroeder, Deputy Attorney General, Department of Justice, Wilmington, Delaware, Attorney for the State.

Sean A. Smith, Howard R. Young Correctional Institution, P.O. Box 9561, Wilmington, DE 19809, *pro se*.

**O'CONNOR,** Commissioner.

This 9th day of August, 2024, upon consideration of Defendant's Motion for Postconviction Relief;[1] Defendant's Memorandum in support of his Motion for Postconviction Relief;[2] the State's Response to Defendant's Motion for Postconviction Relief; Defendant's Reply Brief;[3] the Affidavit of defense counsel;[4] and the record in this matter, the following is my Report and Recommendation.

## PROCEDURAL BACKGROUND

On September 14, 2022, Sean A. Smith ("Defendant") was arrested by officers from the Wilmington Police Department ("WPD") for Possession of a Firearm by a Person Prohibited, Possession of Firearm Ammunition by a Person Prohibited, and Possession of Marijuana. On November 7, 2022, a New Castle County Grand Jury indicted the Defendant for Possession of a Firearm by a Person Prohibited, and Possession of Firearm Ammunition by a Person Prohibited.[5]

This Court presided over a jury trial from July 31, 2023 to August 1, 2023. On August 1, 2023, A New Castle County jury found Defendant guilty of both offenses, Defendant's bail was revoked, and sentencing was deferred.

On August 30, 2023, this Court sentenced Defendant, imposing an aggregate sentence of nine years Level V, suspended upon serving five years Level V

---

[1] Docket Item ("D.I.") 37.
[2] D.I. 38.
[3] D.I. 45.
[4] D.I. 44.
[5] The State dismissed the possession of marijuana charge prior to Indictment.

(mandatory, pursuant to 11 *Del. C.* § 1448(e)(1)(b)), followed by one year Level III probation. The Defendant did not appeal his conviction and sentence.

On October 25, 2023, Defendant filed a *pro se* Motion for Postconviction Relief ("Motion"),[6] and a Memorandum of Law in Support of his First Motion for Post-Conviction Relief Pursuant to Superior Court Criminal Rule 61 ("Memorandum").[7]  In the Motion and accompanying Memorandum, Defendant raises two ineffective assistance of counsel claims:  first he asserts trial counsel was ineffective for failing to file a motion to suppress, claiming that the police "exceeded the scope of a protective search substantiated by *Terry v. Ohio*;"[8] and second, Defendant argues defense counsel's representation compromised his trial rights and autonomy interest.[9]

In support of his claims, Defendant alleges that, while detained during the execution of a daytime search warrant at 112 East 23rd Street, Wilmington, Delaware, police officers patted him down and seized from his pockets a set of car keys and a zip lock bag containing approximately .5 grams of a green leafy substance that field tested positive for marijuana.[10]  According to Defendant, at the same time,

---

[6] D.I. 37.
[7] D.I. 38.
[8] *Id.* at 7.
[9] *Id.* at 13.
[10] *Id.* at 3.  The Adult Complaint and Warrant provides that several individuals present at 112 East 23rd Street were detained in front of the residence on the curtilage, and they were "observed directly associating with the address and potential targets." *See State of Delaware v. Sean A. Smith*, Case No. 2209007025, Adult Complaint and Warrant, Exhibit B, at 3.  Defendant also concedes he was

3

the police "reported directly to a Black 2014 Nissan Rogue . . . parked directly in front of 112 East 23rd Street," where the officers observed, in plain view on the rear seat of the vehicle, a black firearm.[11] Defendant argues that the police exceeded the scope of a *Terry* search by "conducting a further investigation as to what vehicle the keys belonged to."[12]

The police obtained a search warrant for the Nissan Rogue, and after towing the vehicle back to WPD, they executed the search warrant, seizing a black Taurus nine-millimeter handgun loaded with eleven rounds of nine-millimeter ammunition from the rear seat of the vehicle.[13]

Defense counsel submitted an Affidavit in response to Defendant's ineffective assistance of counsel allegations.[14] In response to Defendant's claims, defense counsel explained he did not identify any suppression issue that was either meritorious or would have changed the outcome of the trial. He also summarized his understanding of the circumstances of Defendant's detention and arrest.

---

"present on the residence's porch" during the execution of the warrant. D.I. 38, Memorandum at 5 ("The Defendant was present on the residence's porch, which was encompassed within the search warrant's description of the curtilage.")

[11] *State v. Smith*, Adult Complaint and Warrant, Ex. B, at 3.

[12] As will be discussed *infra*, Defendant's sequence of events does not comport with the body camera evidence recorded at the scene and entered into evidence by the State at trial.

[13] *Id.*

[14] D.I. 44, Affidavit. In addition to the Affidavit, counsel attached a February 14, 2023 letter sent to Defendant as an exhibit, detailing the procedural posture of the case, the potential penalties he faced, communicated the State's plea offer, and summarized the evidence counsel believed was in the State's possession and likely to be offered at trial.

Specifically, while the police were executing the search warrant, an officer observed a firearm in plain view in the rear seat of a vehicle parked immediately in front of the residence being searched.[15] The police then conducted a DMV inquiry, which indicated the vehicle was registered to Defendant.[16] The police secured the vehicle, transported it to WPD headquarters, obtained a search warrant, and searched the vehicle.[17] Subsequent DNA analysis of swabbings taken by WPD of the firearm indicated that "Defendant's DNA was on the firearm."[18] Defense counsel also generally denies that his representation violated Defendant's trial and/or autonomy rights.[19]

## PROCEDURAL BARS

In any motion for postconviction relief, this Court must first determine whether a defendant has satisfied the procedural requirements of Superior Court Criminal Rule 61 ("Rule 61") before considering the merits of any underlying claim.[20] Rule 61(i) prohibits the Court from considering motions for postconviction

---

[15] *Id.* at 1-2.
[16] *Id.*
[17] *Id.*
[18] *Id.* at 2.
[19] *Id.*
[20] *Taylor v. State*, 32 A.3d 374, 388 (Del. 2011) (quoting *Shelton v. State,* 744 A.2d 465, 474 (Del. 1999)).

relief that are untimely,[21] repetitive,[22] procedurally defaulted,[23] and/or formerly adjudicated.[24]

This is Defendant's first Motion, and it was timely filed on October 25, 2023, less than two months after this Court imposed sentence. Additionally, pursuant to Rule 61(i)(3), any claim not previously asserted is considered waived, and here, Defendant did not raise his claims before the judgment of conviction was entered. However, because ineffective assistance of counsel motions cannot be raised at any earlier stage of the proceedings, they are properly asserted in a motion for postconviction relief, and the procedural bar of Rule 61(i)(3) is inapplicable as to those claims.[25]

Finally, the procedural bar, found in Rule 61(i)(4) does not apply to Defendant's postconviction motion, as his postconviction claims were not formerly adjudicated.

Because Defendant's Motion is not procedurally barred, his claims will be addressed in the order they were presented.

---

[21] Super. Ct. Crim. R. 61(i)(1).
[22] Super. Ct. Crim. R. 61(i)(2).
[23] Super. Ct. Crim. R. 61(i)(3).
[24] Super. Ct. Crim. R. 61(i)(4).
[25] *See Green v. State*, 230 A.3d 160, 175-76. (Del 2020).

6

**DISCUSSION**

To successfully present an ineffective assistance of counsel claim, a defendant must not only show that defense counsel's performance was deficient; he must also show that defense counsel's deficient performance prejudiced him.[26] Judicial scrutiny of defense counsel's performance is "highly deferential."[27] To properly assess defense counsel's performance, this Court is to make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's alleged defective conduct, and to evaluate counsel's performance at the time strategic decisions were made.[28] There exists "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ."[29] And, to present a successful postconviction claim, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[30]

Here, defense counsel indicated he was aware of the factual circumstances of the police officer's discovery and seizure of the handgun, and concluded a motion to suppress would be meritless under the circumstances.[31]

---

[26] *Strickland v Washington*, 466 U.S. 668, 687 (1984).
[27] *Id.* at 689.
[28] *Id.*
[29] *Id.*
[30] *Id.* at 694.
[31] D.I. 44, Affidavit at 1.

To consider Defendant's Motion in the context of the evidence presented at trial, State's Exhibits 3 and 4, the bodycam videos of WPD Detective Anthony Lerro ("Det. Lerro) and WPD Detective Hector Cuadrado ("Det. Cuadrado"), recorded the events leading up to Defendant's detention, the officer's observation of the firearm in the vehicle, the recovery of the key fob from Defendant's pants pocket, which, when activated, provided circumstantial evidence that Defendant possessed the Nissan Rogue, and inferentially, the recovered handgun, and Det Cuadrado contacting WPD dispatch to determine the registered owner of the Nissan Rogue.[32] These recordings are the best objective evidence available to review the police conduct during the execution of the search warrant and detention and search of the Defendant, and the content of the videos will be discussed in detail, below.

As depicted on Det. Lerro's bodycam video as he arrived at the target residence and exited a police vehicle with several other officers, Defendant was moving away from the residence.[33] In fact, the officers commented as they exited the vehicle that they believe Defendant intended to "run," or flee the area.[34] But Defendant had not gotten more than a few yards from the residence, and Det. Lerro detained him and brought him back to the sidewalk.[35] After Defendant was patted

---

[32] State's trial Exs. 3 and 4, Bodycam videos of Det. Lerro and Det. Cuadrado. Det. Lerro felt a set of car keys in Defendant's pocket when he patted him down. *Also see* D.I. 52, Trial Tr. at 52:20 – 53:8.
[33] State's trial Ex. 3, Bodycam video of Det. Lerro.
[34] *Id.*
[35] *Id.*

down, he was handcuffed and seated on the sidewalk just outside the residence, along with several other subjects.[36] A short time later, another WPD officer announced that he saw a firearm in the rear interior of a black Nissan Rogue parked directly in front of the residence.[37]

Once the firearm was observed and the other officers on scene were notified of its existence, Det. Lerro returned to Defendant and removed a key fob from his pants pocket, as he "knew he had a set of car keys on him."[38] The officer then attempted to activate the key fob, and it appeared the Nissan Rogue was activated by the officer's actions.[39] Contrary to Defendant's version of events, the key fob was not removed from Defendant's pocket until after a police officer observed the gun in the rear of the vehicle.[40]

Shortly after the firearm was discovered in the vehicle, Det. Cuadrado was advised of this discovery, exited the residence, and responded to the sidewalk immediately in front of the home being searched and the vehicle containing the firearm.[41] Det. Cuadrado immediately began calling in license plate information to WPD dispatch to obtain the vehicle registration and owner information for the cars

---

[36] *Id.* According to the video, Det. Lerro did not remove any items from Defendant's pants pockets during the initial pat down and detention.
[37] *Id.*
[38] *Id.* D.I. 52, Trial Tr. at 55:9-13.
[39] State's trial Ex. 3, Det. Lerro bodycam video.
[40] *Id.*
[41] State's trial Ex. 4, Det. Cuadrado bodycam video.

in the block, including the Nissan Rogue.[42]  In fact, the Nissan Rogue was the second

vehicle called in to WPD dispatch, and Det. Cuadrado was informed Defendant was

the registered owner of the vehicle.[43]  A short time later, Defendant also confirmed

at the scene that the Nissan Rogue was his.[44]  At this point, WPD had neither entered

the Nissan Rogue nor seized the firearm.  It was only later, after they towed the

vehicle and obtained a search warrant for the vehicle, that WPD searched the vehicle

and seized the firearm.

To the extent the Defendant is challenging the legality of his initial detention,

it is well established that a detention of a person found at the scene of the execution

of a search warrant, supported by probable cause, is reasonable under the Fourth

Amendment.  As the United States Supreme Court held in *Michigan v Summers*:

> If the evidence that a citizen's residence is harboring contraband is
> sufficient to persuade a judicial officer that an invasion of the citizen's
> privacy is justified, it is constitutionally reasonable to require that
> citizen to remain while officers of the law execute a valid search
> warrant to search his home.  Thus, for Fourth Amendment purposes, we
> hold that a warrant to search for contraband founded on probable cause
> implicitly carries with it the limited authority to detain the occupants of
> the premises while a proper search is conducted.[45]

---

[42] *Id.*

[43] *Id.*

[44] *Id.*

[45] *Michigan v. Summers*, 452 U.S 692,704-05 (1981). *Summers* is predicated on recognizing three important law enforcement interests which justify the detention of an occupant on scene during the execution of a search warrant: officer safety, facilitating the completion of the search, and preventing flight.  *Id.* at 702-703. The Delaware Supreme Court reiterated the substance of the *Summers* holding in *Harris v. State*, 2015 WL 4164837, at *2 (Del. July 8, 2015) ("A search warrant implicitly carries with it the right to detain the occupants of the premises that are being searched while the search is conducted.").  And, this Court has held that the term "occupants"

During the investigation and in his Memorandum, Defendant conceded that he was on the porch of the residence as the police approached the residence to execute the search warrant,[46] and based on the video recording of State's Ex. 3, he was a little more than a car length from the subject property when detained, well within the "immediate vicinity of the premises to be searched," and subject to detention while the search warrant was executed.[47] Defendant's reliance on *Terry v. Ohio*[48] to suggest his detention was unreasonable or unlawful is misplaced.

Here, as noted *supra*, Defendant's detention at the scene of the search warrant was reasonable. As the police officers approached to execute the search warrant, the Defendant was observed at the residence, and immediately began walking away. He was clearly within the "immediate vicinity" of the residence when contacted and detained. And, like *Summers*, officer safety concerns, facilitating the completion of the search, and preventing flight were paramount considerations, as the police were executing a search warrant related to a narcotics investigation, which the United

---

"includes all persons on the premises during the execution of the search warrant, and not merely the actual residents of the dwelling." *State v Pesikey*, 1991 WL 138414, at fn. 15 (Del. Super. July 11, 1991).

[46] D.I. 38, Defendant's Memorandum at p. 6 ("The Defendant was present on the residence's porch, which was encompassed within the search warrant's description of the curtilage.")

[47] *Bailey v United States*, 568 U.S. 186, 201 (2013).

[48] 392 U.S. 1 (1968).

States Supreme Court recognized as "the kind of transaction that may give rise to sudden violence or frantic efforts to conceal or destroy evidence."[49]

Once detained, Defendant was handcuffed and patted down for weapons. Feeling a key fob in Defendant's pocket, Det. Lerro did not remove it from Defendant's pocket, but left it in place and lowered Defendant to a seated position on the sidewalk.[50] Another WPD officer, as observed on Det. Lerro's bodycam video, a short time later saw what appeared to be a firearm in the rear passenger area of the Nissan Rogue, and alerted other officers to its presence.[51] It was only after the firearm was observed by an officer and announced to other law enforcement on scene that Det. Lerro returned to Defendant, removed the key fob from Defendant's pocket, and attempted to activate the vehicle with the key fob.[52] Upon doing so, WPD officers retained possession of the key fob.[53]

Assuming that Det. Lerro's recovery of the key fob after the discovery of the firearm and his attempt to activate the vehicle with it constituted a "search" within the meaning of the Fourth Amendment, Defendant's claim that he was improperly searched is meritless, because defense counsel's decision not to file a motion to suppress was reasonable under these specific circumstances.

---

[49] *Summers*, 452 U.S. at 702.
[50] State's trial Ex. 3, Det. Lerro bodycam video.
[51] *Id.*
[52] *Id.*
[53] *Id.*

Here, the Inevitable Discovery Doctrine provides ample justification for defense counsel to exercise his professional judgment in declining to file a motion to suppress.[54] The Inevitable Discovery exception to the Exclusionary Rule allows a court to admit arguably illegally obtained evidence if the evidence would have inevitably been discovered through independent, lawful means.[55] At the scene, the police lawfully detained Defendant, consistent with *Summers*, and in accord with the execution of a residential search warrant at 112 East 23rd Street. A pat down of Defendant suggested he possessed car keys in his pocket, but the keys were not removed from his pocket or seized at that time. A short time later, a police officer looked inside the windows of a black Nissan Rogue parked directly in front of the target residence and saw what appeared to be a firearm in the back seat area. Detective Lerro then retrieved the key fob from Defendant's pants pocket and pressed a button on it, causing the car to alert, providing law enforcement circumstantial evidence that the Defendant had some possessory interest in the vehicle and inferentially, the firearm observed in the back seat. Approximately one minute later, Detective Cuadrado conducted a registration check with WPD dispatch on several vehicles in the block, including the black Nissan Rogue.[56] As a result of

---

[54] *See generally Roy v State*, 62 A.3d 1183, 1189 (Del. 2012); *Thomas v. State*, 8 A.3d 1195, 1198-99 (Del. 2010).

[55] *See generally Nix v. Williams*, 467 U.S. 431, 444 (1984).

[56] State's trial Ex. 4, Det. Cuadrado bodycam video.

this inquiry, Defendant's ownership interest in the vehicle was confirmed, independent of Detective Lerro's seizure of the key fob. Stated differently, Defendant's ownership interest in the vehicle was confirmed by independent, lawful means, and Defendant's postconviction claim fails to demonstrate defense counsel provided ineffective assistance of counsel in not filing a motion to suppress on that basis. It was a reasonable exercise of professional judgment for counsel to conclude that filing a motion to suppress the search and seizure of the handgun was futile and there would be no resulting prejudice to the Defendant.[57] Stated differently, Defendant has failed to establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[58]

As to Defendant's second postconviction claim, Defendant argues counsel's alleged ineffectiveness "compromised [his] trial rights and autonomy."[59] Citing *U.S. v Chronic*,[60] Defendant argues counsel provided defective representation, and defense counsel's extensive ineffective assistance relieves Defendant of his

---

[57] To the extent the parties discussed the Plain View Doctrine in their respective submissions, as a practical matter, this doctrine does not apply here. The Plain View Doctrine allows law enforcement to seize contraband without a warrant so long as certain elements are met. Specifically, "a law enforcement officer may seize, without a warrant, contraband that the officer observes in plain view, but only if (1) the officer is lawfully in a position to observe the contraband, (2) the item's evidentiary value is immediately apparent, and (3) the officer has a lawful right of access to the item." *Hardin v. State*, 844 A.2d 982, 985 (Del. 2004). Here, as the police obtained a search warrant for the vehicle and gun, the Plain View Doctrine is inapplicable.

[58] *Strickland*, 466 US. at 694.

[59] D.I. 38 at 10.

[60] 466 U.S. 648 (1984).

obligation "for a specific showing of prejudice."[61] Upon review of Defendant's autonomy argument, he has not specifically identified the "pivotal moments" of the trial where defense counsel failed to provide effective representation, and he has failed to otherwise identify circumstances when counsel either compromised his trial rights or affected Defendant's autonomy interest.[62]

Defendant's primary argument in support of his claim is that defense counsel did not file a motion to suppress, which, as was discussed in detail *supra*, would not have been meritorious. Moreover, documentation provided by defense counsel indicates he communicated with Defendant by letter prior to trial (Defendant failed to appear for relevant Court proceedings on two occasions during the prosecution of this case (December 9, 2022 and July 10, 2023)), and Defendant did not respond to the letter or otherwise attempt to further discuss his case with counsel.[63] Representation between an attorney and their client is not a one-way street. Without participation, communication, and cooperation from the client, which appears to have been lacking here, a defense counsel's representation can be adversely impacted by their client's lack of cooperation.[64] Additionally, defense counsel: (1)

---

[61] *Id.* at 11.

[62] *Id.* "Self-serving assertions are no substitute for facts and evidence." *State v. Smith*, 2024 WL 1434184, at *2 (Del. Super. Apr. 2, 2014)..

[63] D.I. 44, Affidavit (see exhibit, attached).

[64] As the United States Supreme Court noted in *Strickland*, "Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information." *Strickland*, 466 U.S. at 691.

presented an opening statement and closing argument, cross-examined all State's witnesses, and directed Defendant's trial testimony; (2) presented a credible defense, consistent with Defendant's trial testimony that someone other than Defendant put the gun in the back of Defendant's car; (3) filed appropriate trial motions, including a motion for a *Lolly/Deberry*[65] jury instruction; and (4) after consultation with Defendant, opposed the State's request for an *Allen*[66] charge. Defendant's claim that trial counsel was derelict in his duty to zealously represent Defendant or otherwise compromised Defendant's trial rights and autonomy is unsupported by the record.

## CONCLUSION

For all of the aforestated reasons, I recommend the Motion for Postconviction Relief should be **SUMMARILY DISMISSED.**

**IT IS SO RECOMMENDED.**

/S/ Martin B. O'Connor
Commissioner

oc:    Prothonotary

---

[65] *Lolly v State*, 611 A2d 956 (Del 1992); *Deberry v. State*, 457 A.2d 744 (Del. 1983).
[66] *Allen v. United States*, 164 U.S. 492 (1896).